Our next case is number 23-10600 Brent Berry et al. v. Native American Services Corporation at all. Is it Chappell or Chappell? Chappell. Mr. Chappell whenever you're ready. Thank you, your honors. Good morning. Glenn Chappell on behalf of the relators. This is a false claims act case at the pleading stage. Your honors, if you take away one overarching theme from today's argument, I hope it's this. Your opinion in this case does not need to be overly complicated. I say that because despite the fact there are a large number of issues and angles in this case and a fair number of regulations and statutes involved, each of the key questions in this case can be resolved by applying familiar principles of law that you apply regularly. And I'll walk through those principles as I go through the argument. Time permitting, I'd like to cover three issues today. Interpretation of the SBA regulations, fraudulent inducement, and application of Rule 9b. I would like the court, just to make the court aware, my colleague from the district, is also going to speak at the end of my allotted time on interpretation of the regulations. I think that the government's amicus points out that the district court got it wrong in terms of whether or not being admitted into the 8a BD program meant that they had graduated and that therefore it was no longer applicable. The particular provision I question here. Your honor, that's correct and we agree with the government and I plan to discuss that as we go through. Turning first to that very issue, in fact, your honors, the familiar principle that I would like to put forth for your consideration on this issue is the principle that you articulated in the Glazer case, which we cited in our brief, and that is the court interprets a regulatory scheme to function harmoniously and not to create internal contradictions. In this case, the only way to interpret the regulatory scheme that applies to the 8a business development program in a harmonious way is to interpret the term participant to mean both graduated and non-graduated entities who are still performing under the 8a contracts they've been awarded. If you had a situation where there weren't additional task order bids on an existing contract, but it was already an awarded contract that just needed to play out, would your position be the same? I believe it. Well, my position is the same with regard to the facts here because that's not the case here. The case here is that we had an entity that had been awarded a task order contract and was still bidding on additional task orders. That's why I asked you the different hypothetical. Yes, I think in that case, if I understand the question correctly. You have a participant entity when it is clearly a participant qualifies, meets every criteria, bids on a contract, the government awards a contract, but it's a sole contract for that entity to do X, but the X is going to take two years. It's a two-year contract to do a lot of things. At the end of year one, the entity can no longer be a participant because it has gotten too big. Absolutely, your honor. And in that case, sorry, I didn't mean to interrupt. The entity is allowed under the statute and the governing regulations to continue fulfilling that contract, which it began when it was a participant, right? Yes, your honor, that's correct. So my question is, if between year one, when it became too big to continue being a participant, and the end of year two, when the contract is fulfilled, the relevant person loses ownership or control, what happens? My position in that situation, your honor, is that when you are in the 8A program, you have to notify the government of changes in eligibility. And so in that case, they would still be required to notify the government of that change in ownership and control. And the government has to, in its discretion, decide whether to provide a waiver? That's correct, your honor. That's 13 CFR 124.515. Now, I will point out that in that circumstance, if you look at that regulation sub B4, there is a situation where the government can allow performance to continue if the agency finds that it's necessary to the program's goals to continue to allow that contract to go forward. May I ask you a question about loss of ownership or control? My understanding, and correct me if I'm not correct in my reading, is that the defendants do not challenge the sufficiency with respect to loss of control. It really is just a loss of ownership. That's certainly my position, your honor. I believe you're correct there. Because they really didn't challenge our allegations concerning control. Their position is just that the control requirements did not apply because DWG and associates had graduated from the program. But the regulation in question talks about ownership or control. I mean, it could be one or the other. They have to maintain both ownership and control. And you pled loss of control. We pled both. I know you did plead both, but the district court and they do not challenge the loss of control. That's certainly my position, your honor. Yes. They didn't challenge the other one either. They did. They did not in terms of your factual allegations, but whether or not the possible exercise of an option to purchase with a right of first refusal constituted a loss of majority ownership, right? That's correct, your honor. That was their position. They didn't challenge your factual allegations about what happened. They challenged the legal effect. That's right. They basically said that our allegations did not stay in claim because the option agreement did not. Constitute a loss of ownership. That's correct, your honor. So on that point, I see my time is going quickly. So I just want to point out that the one thing that I think about here that is the most helpful in terms of interpreting how these requirements apply in this participant question is if you look at both the Organic Statute 15 U.S.C. 637 and one of the key implementing regulations, 13 CFR 124.515. Both of those contain provisions authorizing the Small Business Administration to waive the mandatory termination requirement at issue in this case in circumstances that apply specifically, expressly, and only to concerns that have graduated from the 8A program. And I would posit to you that if you interpret participant to include only non-graduated entities, you're placing those waiver provisions at war with the mandatory termination requirement. And I say that because it would make no sense to, in the mandatory termination requirement, exempt the entity, exempt graduated entities from that requirement in the first place, and then in the very next subsection, then include waiver provisions that apply only to those same entities. It would render those waiver provisions superfluous and unnecessary. So it would be contradictory. Thanks. May I ask a question? It was sort of unclear to me after reading the regulations, but who has the duty to disclose to the government that there was a change in ownership or control? The contractor does, Your Honor. And where would I find that? It's not expressly stated in the regulations, but our argument is that when you have this mandatory termination requirement like that, the only way that it can work is if the contractor discloses that information. Now, the only thing I did read was in the First Amendment complaint, the way the allegations are stated is that the attorney for the other side at some point said not to notify the government about the change in ownership or control. And so reading the complaint, it appeared to me that your clients would have been at a disadvantage if they had notified the government. Well, they would have been because they would have been under threat that . . . Well, that's how I read the complaint. That's really what you were alleging, that they were prohibited from notifying the government. That's correct, Your Honor. I think it's . . . the point is that if they were to do anything against the wishes of the defendants, including going to the government about this, they would have been under great threat of economic loss. So that's correct. That's because of the guarantees. That's correct, Your Honor. They were guaranteeing the insurance company. That's correct. They were guaranteeing the company. The whole family, I gather. Yes, it was the spouses, Your Honor, and Mr. Berry and Mr. Goes as well. They were all signatories. Hanging over their head, as it were. That's correct, Your Honor. And if they were to violate any provision of, for example, the Moss Agreement and try to assert control or disagree with the decision by the defendants, our allegation is that then the defendants could have said, well, no, you violated our agreement here. We're going to hold you liable for the amount that you owe DAIC under the surety bond. And I see my time has expired. Thank you, Your Honor. Thank you very much. You've saved your time for rebuttal. Mr. Brewer. May it please the Court. Simon Brewer for the United States. I want to emphasize that the change in ownership and control regulations flow directly from the statute itself. The statute requires the SBA to terminate contract, 8A contracts, if a contractor experiences a change in ownership or control. It would render it ineligible to participate in the program. The statute also contains the waiver provision discussed by my colleague that allows the SBA to waive that requirement in certain circumstances, one of which is only applicable if the business has already exited the 8A program. In light of that statutory scheme, it would make no sense to interpret its implementing regulation as exempting these businesses from the very requirements that the statute imposes and that the statute allows the SBA to waive, but only in limited circumstances. The district court thought, you believe it's incorrect, but the district court thought that it should be guided by the language in one of the regulations, 13 CFR 124.3, which defines participant as, quote, a small business concern admitted to participate in the 8A program, and that if you're not admitted, you're no longer a participant. Why was that analysis incorrect? Your Honor, that definition is perfectly consistent with the government's position here. As our brief explains, a graduate of the 8A program was admitted to participate in the program. But admitted is written in the present tense. It's not written in the past tense. No, Your Honor. It doesn't say a participant is a concern that is admitted to the program. It just says a concern admitted to the program. And you think that constitutes use of past tense language so that it takes everybody? It's broad enough to encompass both as the Supreme Court held in Robinson against Shell Oil. There, the Supreme Court was interpreting an analogous statutory definition of employee as someone employed by an employer. And the Supreme Court held that the language of that statutory definition was broad enough to encompass either current or former employment when context so required under the statute. You've got a recent opinion of this court saying something a little different with a regards to officers. The specifics of the statutory language undoubtedly will matter. But what is important about this regulation? I mean, in the Supreme Court case, you sort of had to interpret employee to mean former because then the retaliation provision wouldn't mean anything. And that's the same with the waiver? You could fire somebody because once they were fired, they're no longer an employee and they could never sue for discrimination. It's not quite the same here. What is analogous here is the waiver provision. That waiver provision applies only if the business has exited the program. And so that clearly contemplates that these former participants that continue to perform under their existing 8A contracts must be encompassed within the regulatory scheme. And that makes sense because the SBA has a continued interest in those concerns, ownership and control until they complete their performance of the 8A contracts as they are required to under the statute and the regulation. In essence, once you're admitted into the program, you are a concern, i.e. a participant, right? Unless you lose control or ownership. That's right. You continue to be subject to those concerns. And also, I think there's a limited time frame. I mean, it's a window. I can't remember now if it's eight years or nine years, but it's not like indefinite. There's a time period where the participant is who was admitted into the program. Eventually, it will terminate the program for that individual. Correct, Your Honor. The company will eventually graduate the program after the expiration of its term. Even after the expiration of its term, it will be obliged under the statute and regulation to continue performing its existing 8A contracts. It just can't be awarded any new contracts. And as long as those contracts continue to be performed, the business is required to abide by the change in ownership and control regulations. And again, that makes perfect sense because the program is designed to benefit concerns that are owned and controlled by these disadvantaged individuals. How does the termination work in practice? Do the contracts terminate as a matter of law upon notice, or the SBA has to take specific action by telling the contractor, okay, pursuant to 15 U.S.C. Section 637A, 21A, the contract is now terminated because you are no longer satisfying the prerequisites of being a participant in the program? I believe the SBA and the contracting agency have to actually take action to terminate those contracts. And again, that makes sense because in certain circumstances, the SBA is authorized to waive that mandatory term. At the same time, they would be considering a waiver, I suppose. The contractor must request the waiver in... I'm not assuming that's the case. They're trying not to have too much damage resulting, economic damage, because the contractor now is out, graduated. The contractor must request the waiver prior to undertaking the change in ownership or control. Normal case, I assume that the contractor thinks he can finish the job. That's right. The contractor is required to finish the job. I thought you said permission. You used the word permission. I want to make sure I understand the scheme as a whole. A participant is not required to get permission from the government to change ownership or control. It's just that those two things have, in your view, in the plaintiff's view, consequences. Yes, Your Honor. Yes, I apologize if I misspoke. If you're a 51% owner and you want to go down to 40%, that may have drastic consequences for you and the contract you have with the government, but you don't need permission from the government to engage in that transaction, right? That is correct. If there are no further questions, we urge... I do have a question. I know it's not relevant particularly here, but if you terminate, so if let's say that there was a change in ownership where I decide that I want to go down to 40% and I sell the other shares to someone else, even if the government, the SBA terminates me as a participant, I still have to then finish the contractual obligation that I have for the existing work? There are two things that I want to tease out there. The first is that you can be graduated or terminated from the program, and the second is that the underlying 8A contracts can be terminated. The change in ownership and control requirements require the termination of the contracts as well if there is a change in ownership and control in the way Your Honor described. You would lose the benefit? You would be taken off the project? Correct. All right. Okay. Thank you. Thank you very much. Thank you. May it please the court, Matt Coniglio on behalf of Great American. With me today is Matt Feinberg who is here on behalf of Native American Services Corp. The plan is for me to have the discussion with the court, but of course if the court has any questions for Mr. Feinberg, he is here as well. The complaint, the amended complaint in this case alleges that there were $50 million in task orders that are at issue here. Trebled under the FCA, that would be $150 million in damages plus other damages that are sought against the surety and the contractor that came in to help what was a failing government contractor. The district court in this case understood the gravity of these claims and did a very thorough job and found not one, but three reasons why this complaint should be dismissed. And all the discussion this morning has been about just the first of those three. I would like to discuss all three with the court this morning. And I'll begin with where we just were. The district court correctly read the regulations regarding ownership and control to say that they apply to participants and participants are defined as Your Honor read already, a small business concern admitted to participate in the 8A program. At this point, 2012 when these facts are alleged to have occurred, at this point DWG was no longer a small business. It was far beyond small and equally important if not more, they were no longer admitted to participate in the program. They were no longer a participant. And the district court recognized, we have cited multiple decisions, administrative decisions, appellate decisions from within the SBA contemporaneous to that time when the SBA clearly delineated between participants and former participants. There's a wrinkle in this case which I think may cut against you. I want you to be able to address it. So here it is. Let's assume the district court is generally right that if you are a participant who exits the program, then all of the other requirements don't apply to you post-exit, at least when you're continuing to finish out an existing contract with the government. But the wrinkle, at least in my mind, is that here, this is not just the finishing out of a contract. There were additional bids on the task order contract. And that feels different to me. It's one thing if you've got a contract that requires you to build a bridge and you're building the bridge and it's going to take X number of years to build the bridge and you exit and then you continue building the bridge. But if the contract is an open-ended contract for government needs and the government comes up with these needs every once in a while and then you bid on these additional needs, it feels to me like you should be a participant again to be able to continue bidding on this task order contract that you were initially approved for, you know, back in the day. Why am I wrong? None of the parties have argued that there is a distinction along those lines. I know. That the definitions do not. It's my distinction and I want to know if it's right or wrong or if I'm just out in left field. Well, Your Honor, I would suggest that the definitions are going to apply either way. That was alleged in the contract, in the complaint, the first amendment complaint. What's alleged in the complaint is that the additional bids for task orders. They were awarded, they made additional bids and they were awarded. Yes, Your Honor. And that their complaint is that somehow in there was a falsity or a fraud. But the government just, I asked the government specifically, if there was a change in ownership or loss of control, then you would be terminated, i.e. you would lose any and all further bids. And in fact, you would actually lose the contracts that you were working on. Yes, Your Honor. So that's a bit of a problem. And here we're in a motion to dismiss stage, are we not? Yes, Your Honor. Okay. And we have to take the allegations of the complaint as true. Factually speaking, yes. But the legal framework is how the district court decided this case. And on this first argument, the district court correctly decided that once we got past the early graduation that DWG had, which occurred before 2012, and that's undisputed, that at that point in 2012, when the company was collapsing. I understand, but you didn't answer Judge Jordan's question, initial question. I apologize. I believe the simple answer is that there is not a distinction, Your Honor. That the regulations do not speak to that dynamic. And if they do, the parties haven't addressed it or we haven't been. I, Mr. Conigliere is trying to make this case simple. So, hypothetically, you have a qualified AA, you want to call it participant or whatever it is. He's a minority interest. He has a majority interest economically in age controlling. That's how we start. He gets up, that's, now we start bidding on jobs, right? Okay. Now we come along, let's say he had 10 jobs going on. We come to a point where he's now disqualified. It has to tell the SBA, and the SBA can have a waiver, do you agree? You let him finish the jobs. Yes, Your Honor. Those 10. But no, he can't bid any more jobs because he's disqualified. There, I disagree. Is that, am I far off? I believe, Your Honor, you are incorrect. That the way the waiver process would work is it's a waiver of whatever the circumstances are. Doesn't a waiver work with regard to jobs that the contractor was performing appropriately as he got them as a minority contractor, an 8A contractor? And the waiver occurs on those jobs, is that right? I believe the waiver occurs across the board. If the SBA approves a waiver. Can he bid new jobs and he's disqualified?  If there's no waiver and you bid on new jobs on a contract that you were initially approved for but haven't even begun to perform, if you're not terminated from the program, then you are still a participant in the program. The question was, if you do not have a waiver, you do not receive a waiver, and there has been a loss of control and or ownership, do you have the ability to bid on new contracts? Yes, Your Honor, you do. Because? Because you are, if you are a participant in the program. Then you remain a participant. Then, and if, well, and in this. That means the district court's reasoning is faulty. Disagree, Your Honor. In this case, DWG had graduated from the program. Under the definition of the SBA, it was no longer a participant in the program. Okay, that's here, okay. But then here, with the time moving forward here, it bids. How can it bid if it's no longer a participant and it's, and it's exited? Well, it, that, the regulations allow for. It may allow it or not allow it, but it continues to be a participant then. You, it seems to me that you can't have a bright line determination of participant and non-participant status with a non-performing contract, a new thing that you're trying to take on. The fact that you've been able, the fact that you've been approved in 2020 for a five-year period to provide widgets to the government when the government needs widgets doesn't mean that after you exit as a participant in 2022, you can now, in 2023, make a new bid on the widgets contract when the government says, we need 100,000 widgets and you bid on that. If you bid on that, you're bidding as a participant. The, the way the regulations operate, you can bid even after you have graduated on task orders related to your original 8A contract. I don't disagree with that, but that means that you're still a participant. Not by the definition of participant. It has to be practically, if you're allowed to continue bidding as, as a minority or qualified entity under the 8A program, the only way you can do that is that for some purposes, at least, you remain a participant. Well, and if not, you wouldn't get the benefits. You'd have to be a person on the street who says, hey, I want to bid for widgets. You wouldn't get any preference. Mr. Conigliere, that makes no sense at all to me. You're now disqualified because you lost control. You tell the SBA, I've got 10 jobs going on. I lost control. I want a waiver. We're not talking about feather jobs. I, my understanding is you can't bid on the feather jobs. Am I right or wrong? I believe, your honor, you are incorrect. I'm not qualified. How can I bid on those jobs? If, if you have not been terminated from the program, then, then you are still working with your 8A contracts as an 8A contractor. You are eligible to bid on the additional task orders. So the SBA can take somebody who's totally disqualified. They have, they're not a majority interest and they don't have control. At one time they did, but the SBA could allow them to continue on business. Is that the scheme? There are a couple of things going on. First, the SBA might not keep, might not take action first, as was discussed earlier. Second, they might take action. I'm talking about the SBA knows that the contractor is no longer qualified by ownership and control. Just no more. Have some jobs going on. My understanding is that they can, he can ask for a waiver and finish those jobs. But that doesn't answer the question. Can he go out and bid on more jobs that are set aside? If the waiver is granted, then I believe there would be no issue even from the other side. I want to try to turn. Wait a minute, but are you saying the waiver on the 10 jobs entitles you to bid on future jobs? You don't have control. If the SBA grants a waiver, which didn't happen here. I'm trying to get this scheme to make sense. The SBA, somebody, some bureaucrat can say to you, you're disqualified because you don't have control. We let you finish jobs. But we're going to let you have new jobs. Because there was a waiver on the jobs that were underway. The waiver would be for the contractor, the waiver of the circumstances. Are you kidding? Answer the question that, yes, you could get new jobs. SBA could give you new jobs, not qualified. Additional task orders. Yes, your honor. What's the, what is the regulation that permits that? I don't have it with me, but I would be glad to file something with the court. You don't need to. When you finish, just take a look and see if you can find it. And then I'll ask you the question once your opponent is done. And if I could turn quickly to the other grounds. Sure. District courts ruling, because they are equally dispositive. The district court ruled that even if there is an eligibility issue here, because of a change in ownership or a change in control. And the district court separately disposed of ownership, and correctly so. It really remains an issue for control. Even if that occurred, there was still no falsity, no fraud for FCA purposes here. Because their complaint is that in the bids or in the payment requests, there was a falsity or a fraud. And the district court correctly observed that doesn't exist here. There is no allegation. It's both a substantive matter, as a matter of how far fraudulent inducement can work. And a procedural matter under Rule 9b. That substantively, we don't have claims that fit the FCA. And procedurally, we don't have claims that fit under Rule 9b and the rules of civil procedure. In this case, there's an allegation that there was- Their theory is that the falsity, to use a large term, arose from the fact that the entity was no longer allowed to bid as a qualified 8a entity. For new jobs. Right? That's the alleged falsity, right? Yes, except they don't allege that there was ever an actual misrepresentation? Any half-truth? They do allege misrepresentation. It's just that you don't accept their misrepresentation. The misrepresentation, they allege, is that there was a loss of ownership and control of the company. And as a result, the government, the SBA, should have been notified in order to get a waiver. And there's allegations in the complaint that a lawyer for Native American, or I'm not sure, I think it was NASCO, said that the government was not to be notified until everything was done. And I mean, the problem also is that we're, you know, this panel is bound. We have a case, Marsteller, that talks about and remanded back to the district court to review the False Claims Act claim under a fraudulent inducement claim. I mean, so we're not here on a blank slate. The district court correctly recognized there can be claims for fraudulent inducement. But this is not one of them. Because in this case, there's no claim that something was falsely said to the government in either the payment requests or even, as they allege, the bid applications. Some things were not said to the government. Isn't that the point? Some things were not said to the government, which, it's like under securities law, there's an omission, which makes the representation false. In Escobar, the U.S. Supreme Court said the FCA is not an all-purpose anti-fraud statute. The fraud must be connected to a payment request. And here, there was no question. There was no box to check that said, are you still eligible? There's no allocation. If Escobar had limited, as you suggest, then the Marsteller court would not have remanded back to the district court for purposes of evaluating the fraudulent inducement claim. I disagree, Your Honor. Within Marsteller, there are tremendous facts set out of actual misrepresentations that were being made to the government concerning the pricing data in that case. And what this court did was simply send it back to the district court to analyze. But you also can have fraud by the act of omission, not just commission. Where there is a duty to disclose in the particular item that we're discussing. So there is no allegation and no law, no fact that suggests that there was some obligation or requirement to disclose something in a bid application. The allegation in the First Amendment complaint is that the government was to be notified that there had been a change, a loss of control, and a change in ownership, which was not permitted by your client. That's the allegation that I have to accept as true. Well, actually, even on that allegation, Your Honor, I would encourage the court to look carefully at the words that are there. The spin on it is this notion there was some kind of block going on, but that's not actually what was said. The words that were said were that we should get the agreements down first. Come together on what the terms of the agreements are before we involve the government. That's very different from saying we're not going to tell the government about some kind of a change. That was early in the drafting process, not with respect to the final products. Let me ask you or present to you a hypothetical that tries to get to the omission part. That's not this case. An entity tries to qualify under the 8A program. It makes a number of misrepresentations and omissions in order to get the certification status. Okay, material misrepresentations without which it would not have gotten 8A status. It gets the 8A status. It submits a bid for a contract. It gets the contract and then performs brilliantly under the contract. With regards to the payment claims that it makes, everything is pristine. We did X on this day. Under the contract, X costs this amount of money. Here's our invoice. Please pay us. Is there a false claim? Not if the misrepresentations did not affect. There's no claim, are you saying? Is there a claim under the False Claims Act? And I'm saying there is not if those, your honor, didn't say what the misrepresentations were. I'm lying that I am a disabled veteran to use the facts in this case or at least borrow from them. I lie that I am a disabled veteran and I create a ton of false documents and a false identity indicating that I served in the military during this period of time and I was disabled during a tour of duty and I get my certification. It turns out that I'm a fraud and I never served in the military. I was never injured. I'm not a disabled veteran and my entity should have never gotten 8A status. But once I get it through fraudulent means, both misrepresentations and omissions, I perform perfectly under the contract. The government can't complain about a single thing that I did. I overperformed. But I submit the bid as a false 8A entity, get the contract, and then submit bids for payment. Are any of those bids for payment fraudulent or false claims under the FCA? The payment requests, no. They would not be if the original... So you don't have an FCA claim in that circumstance? It sounds like there would be a lot of crimes going on there and a lot of claims potentially under other statutes but under the FCA which is a false claims statute where payment requests must be false or fraudulent. Right. The answer there would be no. Okay. All right. Thank you very much. We've taken you way over your time but we appreciate the help. Thank you. Thank you. And obviously, both sides, you've saved everything that you've presented in the briefs. You don't have enough time to get to everything here. We'll review all of the issues. Mr. Chappell, I can see some help here. You're admitted to the 8A program, goes-was, okay. He's got jobs and then he loses control. And all the contracts are terminated by operation of law is my understanding. But there could be a waiver and they could allow him to finish those jobs. Now, what happens when there's a new contract he wants to bid? He's not qualified. My understanding is he's out. Your Honor, my understanding in that situation is that it-I suppose it could be hypothetically possible that the government could grant a waiver to allow him to bid under an existing contract. Because this is an IDIQ contract where the contract has been awarded but the particular bids were not. So, hypothetically- You're saying it depends on the contract. Yes, Your Honor. And in this case, I think, hypothetically, the government could grant a waiver. But it's important to note here that they did not seek a waiver. And I think it's because they were concerned of the fact that they would not get a waiver. They didn't seek it at all. So, you can't-you can't grant a waiver when it's not sought. That's-that's correct, Your Honor. And a couple very, very quick points on the distinction here. I think it's really important, Judge Jordan, you pointed that out. These are future bids for future task orders. And that's important, you know- That theory wasn't argued below, though. Well, Your Honor, I think it was. But the point I would just mention is- Nobody drew that nuance. Well, I would just say that in the complaint, we point out- You alleged it, but nobody argued it to the district court. Well, I respectfully disagree, Your Honor. But, you know, I'll let the briefs speak for themselves. We may not have said it in exact-in those exact words. But I think we did advance the main argument that we're trying to make here. And I just want to point out that in the complaint, we show examples of why it's critical to not allow this conduct to happen here. Because you are bidding for these future task orders against other bona fide 8-8 participants. And, in fact, there were competing bids for the task orders at issue here. Other very quick- Isn't it a little bit odd that the people who are sitting here were part of the entity that committed the fraud? I don't think so, Your Honor. I think that happens all the time in the FCA space. No, no. People who know about the fraud. These are people who are insiders. They are part of the entity. Well- They commit the alleged fraud that you base your complaint on. And now they're like, hey, we're the saviors. We're going to come save you, government. We're going to file a false claim as relators. And we're going to reap in this bounty of the fraud that we helped propagate when we were inside. Your Honor, I think that is incorrect for several reasons. I think the most important reason that's incorrect is it's important to understand from the allegations that our clients were shut out of the decision-making process. They were not given information on what was happening with DWG after these agreements were signed. And so they did, and we allege that they did raise concerns about notifying SBA of this change. And they were told, in fact, that they would, that NASCO and GAIC would notify the SBA. They never did so. So I would push back on your characterization there, Your Honor, because our clients did try to do the right thing here, and they were sidelined here. And they did not know what was going on, you know, per what we allege in the First Amendment complaint. I know my time is up. If I may make one very brief point, Your Honors, on the issue about the bids and, you know, we talk about fraudulent omission and what was certified. This is not a case where we are saying necessarily that the defendants said particular explicit things in the bids that indicated they were, that DWG was still eligible. What we're saying is that the act of bidding, the very submission of a bid itself, inherently involves the representation that you're eligible to bid on the task orders and that you can do the work eligibly. And I would just point out that Congress agrees with us here. 15 U.S.C. 632 W2 says the following actions shall be deemed affirmative, willful, and intentional certifications of small business size and status. And the very first one, sub A, is submission of a bid or proposal for a federal grant contract, subcontract, et cetera. So it's inherent that when you submit a bid, you're saying I can do the work. That's why I'm bidding. If I'm a lawyer and I offer to represent a client in a particular court in a particular state, it's inherent in that representation that I'm licensed or at least can be licensed to handle that representation. If the bid is a falsity, what's the monetary recovery linked to? If it's not the submission of the monetary claim? Well, it's linked to both because under your decision in Marshteller, when you have that original fraud, it renders all the subsequent claims for payment false. Because the government never would have given these task orders to this entity. The remedy would be a discouragement probably, wouldn't it? I'm sorry, Your Honor? The remedy would be discouragement. Well, the remedy would be recovery to the government for all the amounts awarded under the contract, Your Honor. Thank you. Oh, you know what? Thank you, Mr. Conigliaro. I asked you for a citation and I told you I would come back to you and I completely forgot. So go ahead. Your Honor, I'll confess, I don't have full notes on the question Your Honor asked, but from what I have, I believe the citation would be 13 CFR 124.30F1, the 2012 version. If it turns out that that's incorrect, you can file a letter within 10 days and you can respond if you think that citation for that proposition is inaccurate. Okay. Thank you both very much.